IN **THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACK C. SWENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 11 C 4295 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| SALIENT MANAGEMENT | ) | |
| COMPANY, GUY AMISANO, | ) | |
| WILLIAM CARPENTER, and | ) | |
| CHRISTINE CAVANAUGH, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

After Jack Swenson, who is proceeding *pro se*, was terminated from his position, he sued his former employer Salient Corporation ("Salient") and certain of its employees, Guy Amisano, William Carpenter and Christine Cavanaugh, for age discrimination, breach of his employment agreement and wrongful termination. The parties cross-move for summary judgment. For the reasons stated herein, the Defendants' motion is granted while Swenson's motion is denied.

**Facts**

The Court briefly recites the factual background of the case here and includes additional detail as necessary in the text of this order. Salient is a company based in New York. (Pl.'s Resp. Defs.' Stmt. Fact, Dkt. # 155-1, ¶ 2.) At all relevant times, Guy Amisano ("Amisano") was Salient's Chief Executive Officer, William Carpenter ("Carpenter") was Salient's Chief Operating Officer and Christine Cavanaugh ("Cavanaugh") was Salient's Corporate Controller, Human Resources Manager and Accounting Manager. (*Id*. ¶¶ 3-5.)

On June 16, 2010, Salient extended an offer of employment to Swenson by letter. (*Id*. ¶ 12.) Swenson rejected the terms of the June 16, 2010 letter and delivered to Carpenter, among others, a memorandum detailing additional contractual language regarding his terms of employment. (*Id*. ¶ 14.) The June 16, 2010 letter was replaced by a letter dated June 17, 2010, which Swenson signed, and included a start date of June 28, 2010. (*Id*. ¶¶ 15, 18.)

Swenson was terminated on August 16, 2010. (*Id*. ¶ 57.) Defendants claim it was for insubordination for failure to provide a business plan for a new part of Salient's business dealing with healthcare. (*Id*.) Swenson alleges that he was wrongfully terminated in breach of his purported employment contract for taking a company-approved vacation and because of his age.

**Standard**

A party may move for summary judgment on a claim or defense and the motion shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To oppose a motion for summary judgment successfully, the responding party may not simply rest on its pleadings, but rather must submit evidentiary materials showing that a material fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine dispute of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether a genuine dispute of material fact exists, the court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *Id*. at 255. It is not for the court at summary judgment to weigh evidence or determine the credibility of a witness' testimony. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 623, 630 (7th Cir. 2011).

**Analysis**

      A.      <u>Breach of Contract and Wrongful Termination</u>

As an initial matter, the Court notes that the legal basis for Swenson's purported wrongful termination claim is unclear. Swenson does not address the wrongful termination claim separately from the breach of employment contract claim. Because the parties appear to treat the claims as one and the same, the Court does also.

Defendants claim that because there was no employment contract, both the breach of employment contract and wrongful termination claims must fail. Swenson, on the other hand, insists that he had a contract for a duration of employment that was "permanent," "long-term" and "in perpetuity" such that his termination breached that contract.

In support of their position that Swenson was an at will employee who could be terminated at any time, Defendants point to the June 17, 2010 letter they sent to Swenson, which states, in part: "Confirming your conversation with Mr. Bill Carpenter, Chief Operating Officer, Salient Corporation is making you an offer of employment in the position of Sr. VP, Healthcare with a start date of June 28, 2010." After discussing the various forms of compensation being offered, the letter states:

> During the first 60 days of employment, Salient Management agrees to work with you to determine the appropriate legal and operational structure for either the new corporation (Salient Healthcare), or new healthcare vertical, and compensation components which may include base salary, bonuses, commissions, incentives and equity.
>
> . . .
>
> It should be understood that this letter merely confirms our understanding and does not constitute an employee contract (i.e., either one of us can terminate

2

>employment at will, with or without cause).  Further, this offer of employment supersedes any prior or subsequent oral representation that might be made.

(Defs.' Ex. K, Dkt. # 126-14.)

The letter then asks Swenson to "[p]lease acknowledge acceptance of this offer letter by signing and returning by mail at your earliest convenience." (*Id*.)  The copy of the letter referenced by Defendants includes Swenson's signature. (*Id*.)

"Illinois follows the general rule that an at-will employee may be discharged for any reason or no reason." *Lucas v. Cnty. of Cook*, 987 N.E.2d 56, 68 (Ill. App. Ct. 2013) (internal quotation marks and citations omitted).  *See also A.T.N., Inc. v. McAirlaid's Vliesstoffe GmbH & Co. KG*, 557 F.3d 483, 486 (7th Cir. 2009) ("Illinois law generally disfavors perpetual contracts. . . . . [and] [f]or this reason, contracts of indefinite duration are generally deemed terminable at will by either party").  Thus, Salient's offer of employment letter, which clearly states that Swenson's employment is at will and may be terminated by either party with or without cause and was accepted by Swenson, negates his claim that he was terminated in violation of a contract.

Swenson argues that the employment at will doctrine is only a presumption that can be overcome if the employee can demonstrate that the parties contracted otherwise.  *See Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987) (agreeing with majority of courts that employment at will is "only a presumption that a hiring without a fixed term is at will . . . which can be overcome by demonstrating that the parties contracted otherwise").  Swenson faces an uphill climb given the clear language of the June 17, 2013 letter.  Moreover, the Court notes that in his memorandum proposing changes to the initial June 16, 2010 letter, Swenson asked that the last paragraph, which contained the at will language, be removed since "we are moving towards a more extensive employment arrangement here." (Defs.' Ex. I, Dkt. # 126-12, at 2.)  The June 17, 2013 letter, which Swenson signed, did not delete that language.  *AGA Shareholders, LLC v. CSK Auto, Inc.*, 467 F. Supp. 2d 834, 846 (N.D. Ill. 2006) ("Under Illinois law, the object of a signature is to show mutuality or assent") (internal quotation marks, alterations and citations omitted).

In any event, Swenson's references to oral statements and negotiations leading up to or after the offer are unpersuasive as the letter expressly states that it supersedes any prior or subsequent oral representations. (Pl.'s Resp. Defs.' Stmt. Facts, Dkt. # 155-1, ¶ 15.)

Swenson's citation to the Salient Employee Handbook is equally unavailing.[1]  The cover page of the Handbook states that the "content of an Employment Handbook does not constitute nor should it be construed as a promise of employment or as a contract between Salient

---

[1] The Court notes that Swenson states in his memorandum of law that he was not provided a copy of the Salient Handbook until 24 days after his hire date. (Pl.'s Mem. Supp. Summ. J., Dkt, # 155-3, at 8.)

3

Corporation and any of its employees." (Defs.' Ex. L, at 1.) The "Dismissals" section of the Handbook states that "[e]very Salient Corporation employee has the status of 'employee at-will,' meaning that no one has a contractual right, express or implied, to remain in Salient Corporation's employ." (*Id.* at 49.) It goes on to provide that Salient "may terminate an employee's employment, or an employee may terminate his/her employment, without cause, and with or without notice, at any time for any reason." (*Id.*) Further, Swenson signed an Employee Acknowledgment Form dated July 21, 2010, which indicates that he received a copy of the Handbook and states in part that:

> No statement contained in th[e] Employment Handbook creates any guarantee of continued employment or creates any obligation, contractual or otherwise, on the part of Salient Corporation. I have entered into my employment relationship with Salient Corporation voluntarily, and I acknowledge that there is no specified length of employment.

(Defs.' Ex. M.) The Handbook makes clear that employment at Salient is at will.[2] The Court also notes that Swenson filled out and signed a Salient Application for Employment on June 29, 2010, which states that "[i]f I accept an offer of employment I understand the employer may terminate my employment at any time, with or without cause and without prior notice, unless required by law." (Dkt. # 138, Page # 00010.)

Swenson refers to the Handbook section entitled "Initial Employment Period," which states that each employee is subject to an initial employment period of three months, and appears to assert that he was entitled to at least 90 days' employment. (Pl.'s Ex. 5, at 13.) But the section indicates that the period is one of "adjustment" during which time the employee can determine if the employee likes his new position and the employer can evaluate the employee's performance. (*Id.*) The section concludes that "[i]n recognition of the fact that the initial employment period involves a great deal of uncertainty as to the employee's long-term status

---

[2] Swenson's contention that the at will provisions in the Handbook were not conspicuous or otherwise prominently displayed is unconvincing in light of the presence of the at will provisions in the June 17 letter offer, the Handbook Acknowledgment Form, and the Application for Employment. Moreover, the statements in the Handbook regarding at will employment are clearly displayed and not hidden within text where such a provision would be unexpected. *Cf. Long v. Tazewell/Pekin Consol. Commc'n Ctr.*, 574 N.E.2d 1191, 1193-94 (Ill. App. Ct. 1991) (finding disclaimer that employment was at will was not set out separately and instead was "hidden within the text describing the duties of the telecommunicator" and thus did not negate promises set forth in the handbook regarding progressive disciplinary procedures). In addition, the Court notes that the Performance Improvement Plan section of the Handbook, which sets forth how problems with an employee are to be addressed, specifically states that a "[Performance Improvement] Plan . . . does not guarantee continued employment nor does it create any obligation, contractual or otherwise, on the part of Salient to retain an employee" or "change the 'at will' status of employment." (Pl.'s Ex. 5, at 50.)

4

with the company, *benefits will not begin until after that period has concluded*." (*Id.*) (emphasis added.) The section simply provides that an employee will not receive benefits during this period, not that employment is guaranteed a job for ninety days. In light of the numerous express statements in the Handbook that employment is at will, the Court does not conclude that the recognition of an "initial employment period" during which time benefits are not provided constitutes a contract that Swenson was guaranteed employment for that period of time.

Swenson also argues that the parties contracted for long-term employment because he was required to sign a three-year non-competition agreement as well as a ten-year nondisclosure agreement with Salient's client, Coca-Cola Company, as part of his employment with Salient. (Defs.' Resp. Pl.'s Stmt. Fact, Dkt. # 156-2, ¶¶ 21, 22.) Swenson, however, fails to indicate how the non-competition or nondisclosure agreements overcome the presumption of at will employment. The same is true regarding Swenson's reference to the "numerous written documents, agreements, and email communications evidencing other contractual terms exchanged between the parties whereby [he] would oversee the Salient Healthcare business entity." (Pl.'s Reply, Dkt. # 159, at 2.) First, Swenson does not specifically identify these documents. Moreover, he fails to demonstrate that the documents represent an enforceable contract for employment for a specific period of time, *Duldulao*, 977 N.E.2d at 318, such that they override the express statements in the offer letter, the Handbook, the Handbook Acknowledgment Form and the employment application, all signed by Swenson, that his employment was at will and could be terminated at any time.

Swenson next contends that the tiered salary based on certain sales set forth in the June 17, 2010 offer letter creates a contract of duration, citing *Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817 (Ill. App. Ct. 2003). In *Cress*, the Court stated that "[a]n employment agreement articulating cognizable events upon which termination may occur is not perpetual and terminable at will and will be upheld even in the absence of a specified termination date." *Id.* at 840. Here, however, the June 17 letter provides that Swenson's salary will increase "once sales reach" a certain amount, and does not condition employment on those sales numbers. (Defs.' Ex. K, Dkt. 126-14); *cf. Cress*, 795 N.E. 2d at 839-40 (contract not terminable at will because salary would not be reduced as long as employee "capable of performing" his job).

Finally, Swenson argues that his foregoing other lucrative job offers demonstrates that the parties entered into a contract of employment for a duration of time, citing *McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347 (Ill. 1997). In *McInerney*, upon hearing that the plaintiff had received a job offer from a different company, the defendant's president "urged" the plaintiff to turn down the offer and promised to guarantee the plaintiff a certain commission "'for the remainder of his life,' in a position where he would be subject to discharge only for dishonesty or disability." *Id.* at 1349. The court concluded that the plaintiff "gave up a lucrative job offer in exchange for a guarantee of lifetime employment," thus providing a "near textbook illustration of consideration." *Id.* at 1350. As an initial matter, the *McInerney* court's statement addressed the defendant's legal contention that a promise to forego employment is not sufficient consideration to create a contract, which is not at issue here. Nevertheless, Swenson's case is factually distinguishable because here, there was no offer of lifetime employment and no

5

statements that Swenson could be fired only for cause. To the contrary, all of the documents expressly addressing the issue indicated that Swenson's employment was at will and that he could be fired at any time for any reason.[3]

Because Swenson's employment was at will with no guaranteed duration, the Court grants Defendants' summary judgment motion with respect to the breach of contract and wrongful termination claims.

    B.    <u>Age Discrimination</u> (against Salient)

To prove discrimination in violation of the Age Discrimination in Employment Act, ("ADEA"), Swenson must establish that Salient subjected him to an adverse employment action because of his age. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010). Swenson may attempt to prove his ADEA claim under the direct or indirect methods. *Id*. Under the direct method, a plaintiff must produce either direct or circumstantial evidence of discrimination. *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009). Direct evidence usually "requires an admission of discriminatory animus," while circumstantial evidence "establishes an employer's discriminatory motive through a longer chain of inferences." *Id.* Swenson does not attempt to proceed under the indirect method, so the Court addresses the evidence only as it relates to the direct method.

In support of his claim that he would not have been terminated but for his age, Swenson points to "age discrimination incidents" that took place on June 28 and June 30, 2010. (Pl.'s Mem. Supp. Summ. J., Dkt. # 155-3, at 8, 9; Pl.'s Resp. Defs.' Mot. Summ. J. & Cross-Mot. Summ. J., Dkt. # 155, ¶¶ 11-14.) While Swenson fails to provide any detail regarding these incidents, according to Defendants' statements of fact, Swenson is referring to alleged conversations in which Carpenter and Amisano asked Swenson to tell them his age, which he refused to do. (Defs.' Stmt. Facts, Dkt. # 153-2, ¶¶ 34, 36.) Although not resolvable on summary judgment, the Court notes that Carpenter and Amisano deny having asked Swenson his age. (*Id*.)

An "isolated comment or 'stray remark' is typically insufficient to create an inference of discrimination, but it may suffice if it (1) was made by the decision-maker, (2) around the time of the decision, and (3) referred to the challenged employment action." *Mach*, 580 F.3d at 499. Here, the alleged questions regarding age were not made in reference to the termination decision. Moreover, Swenson admitted that Carpenter and Amisano knew his age before they hired him

---

[3] Nor is Swenson's reference to *Johnson v. George J. Ball, Inc*., 617 N.E.2d 1355 (Ill. App. Ct. 1993), apposite. That case addressed a motion to dismiss, arguing that plaintiff had not adequately stated a cause of action for breach of an oral contract, and not a motion for summary judgment. Moreover, there is no mention in the *Johnson* case of numerous references in employment documents to at will employment that could be terminated any time for any reason, as exist here.

based on his driver's license and other employment records he had provided to them. (Swenson Dep., Defs.' Ex. B, at 262:23- 263:4.) Given that Swenson was only employed by Salient for approximately six weeks and thus his age did not significantly change during that period, the Court does not find that questions about Swenson's age could reasonably lead a factfinder to conclude that he was terminated based on his age.

Swenson also makes reference to harassment and threats, including unduly burdensome work assignments which, he argues, hindered his ability to complete the business plan. He also asserts that Carpenter demanded that he turn in the business plan only one month after he was hired, contrary to their original agreement. Again, however, even assuming that these actions constituted adverse employment actions, Swenson fails to point to any record evidence that the additional assignments and projects, or the request that he produce a copy of the business plan earli`er than originally discussed, were in any way related to his age. For these reasons, the Court concludes that Swenson has failed to show age discrimination under the direct method.

To the extent that Swenson contends that the age discrimination incidents were "outrageous, reckless, and completely outside all possible bounds of decency," and thus constituted severe emotional distress, this argument is inapposite. Not only did Swenson not allege an intentional infliction of emotional distress claim, even if he had, asking someone to state his age does not rise to the level of the extreme and outrageous conduct necessary to prove such a claim.

Accordingly, the Court grants the defendants' summary judgment motion on the age discrimination claim.

**Conclusion**

For the reasons stated above, Defendants' motion for summary judgment [153-1] is granted and Swenson's motion for summary judgment [155-1] is denied. Civil case terminated.

**Date**: August 14, 2013   _____
**Ronald A. Guzmán**
**United States District Judge**